**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Lyn Schaum, | No. CIV-04-2290-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Honeywell Retiree Medical Plan Number 507 and Business Entities A through E, | |
| Defendants, | |
| vs. | |
| Computerized Healthcare Management Services, LLC d/b/a Carestaf of Arizona | |
| Intervenor. | |

Currently before the Court is Defendant's Motion to Dismiss Carestaf's Complaint in Intervention (Dkt. #87); Carestaf's Cross-Motion for Partial Summary Judgment (Dkt. #93); and Carestaf's Motion for Additional Discovery pursuant to Rule 56(f). (Dkt#140). After reviewing the pleadings, the Court issues the following Order.

**I.      Background**

On April 25, 2005, this Court granted Carestaf of Arizona's ("Intervenor" or Carestaf") Motion to intervene in this case. (Dkt.#78). On the same date, Carestaf's lodged Complaint ("Complaint") against Defendant Honeywell Retiree Medical Plan Number 507 ("Defendant" or "Honeywell") was deemed filed by the Court. (Dkt.#79). Carestaf's Complaint alleges

several claims against Honeywell arising out of skilled nursing treatment provided to the Plaintiff in this action, Diana Lyn Schaum ("Plaintiff" or "Ms. Schaum").  Specifically, Carestaf, as the purported assignee of Plaintiff, has asserted a claim under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 et seq., for benefits owed to Plaintiff.  Carestaf has also asserted a declaratory claim seeking an order from this Court declaring Honeywell as the party "economically responsible" for the 24-hour per day skilled nursing care provided to Plaintiff since May 13, 2004.  Lastly, Carestaf has asserted the following state law causes of action: breach of contract, promissory estoppel, fraud and negligent misrepresentation.  Defendant has moved to dismiss these claims.  (Dkt.#87).

**A.     Procedural History of this Case.**

On September 13, 2005 the Court granted Plaintiff's motion for summary judgment against Defendant and denied Defendant's motion for summary judgment. (Dkt.#107). Specifically, the Court concluded that it is "medically necessary" for Plaintiff to receive the disputed 24-hour skilled nursing care as a beneficiary under the Honeywell Retiree Medical Plan Number 507 ("the Plan") and that the reduction to only two hours of such care per day would be patently unreasonable.  In the order granting Plaintiff's motion, the Court directed both Defendant and Carestaf to file briefs regarding whether the Court's ruling "mooted in whole or in part" Defendant's Motion to Dismiss the Complaint in Intervention (Dkt#87) and Carestaf's Cross-Motion for Partial Summary Judgment. (Dkt.#93).

Both Honeywell and Carestaf timely responded to the Court's request.  Honeywell informed the Court that the Court's ruling did not moot in any respect its pending Motion to Dismiss Carestaf's Complaint.  Specifically, Honeywell set forth that there is still a dispute as to whether it is obligated to provide benefits prior to the Court's temporary restraining order issued on December 20, 2004.  (Dkt.#109).  Therefore, the issue of payment for services from June 11, 2004 through December 20, 2004 remains pending.[1]  Additionally,

---

[1] This issue appears to be the subject of Carestaf's Motion for Summary Judgment on the ERISA Count of its Complaint in Intervention. (Dkt.#146).

1  Honeywell set forth that Carestaf's state law claims are preempted by ERISA. Lastly,
2  Honeywell noted to the Court that it believes Carestaf does not possess the requisite standing
3  to assert an ERISA claim as the assignment from Plaintiff to Carestaf was void because of
4  the Plan's anti-assignment provision.

5  Carestaf's brief to the Court related that Carestaf still seeks a ruling from this Court
6  regarding the validity of the assignment between Plaintiff and Carestaf, which is the subject
7  of its Motion for partial summary judgment. (Dkt#108).

8  On November 8, 2005 a status conference was held by the Court.. At the hearing it was
9  noted that Defendant has appealed the Court's ruling granting Plaintiff's motion for summary
10 judgment. (Dkt.#120). Moreover, both Carestaf and Defendant informed the Court that a
11 ruling on Defendant's Motion to dismiss and Carestaf's Motion for partial summary judgment
12 is needed to push the case forward.

13 **B.      Carestaf's Complaint Against Honeywell**

14 Carestaf's Complaint in Intervention asserts the following allegations against Honeywell.
15 Carestaf asserts that Plaintiff has Caharcot-Marie-Tooth disease and/or Muscular Dystophy
16 that has rendered her virtually paralyzed from the neck down. (Complaint ("Compl.") ¶9).
17 Since 1991, Plaintiff has received 24/7 skilled home nursing through her status as a
18 beneficiary of a Honeywell disability insurance policy. (Compl. ¶9). However, on January
19 16, 2004, Honeywell informed Plaintiff that it intended to reduce her benefits to only two
20 hours of skilled home health care services per day. (Compl. ¶10). Although Plaintiff
21 corresponded several times with Defendant regarding this decision, Defendant treated only
22 Plaintiff's May 17, 2004 communication as an appeal of its decision. (Compl. ¶10). During
23 this time Defendant continued to pay bills for Plaintiff's 24-hour per day skilled nursing care.
24 (Compl. ¶10).

25 On May 6, 2004, Carestaf agreed to provide home nursing services to Plaintiff and to take
26 over the services originally provided by MD Home Health Staffing, effective as of May 12,
27 2004. (Compl. ¶ 11,12). Carestaf alleges that at the time, it was not made aware that
28 Plaintiff's benefits were to be reduced to only two hours of skilled nursing care per day by

- 3 -

1 Honeywell. (Compl. ¶12). Carestaf specifically alleges that despite communicating, on May 6, 2004, directly with Defendant's agent, United HealthCare, for the purpose of obtaining authorization to provide such services, it was not informed that Plaintiff's benefits were to be reduced. (Compl. ¶12).

Carestaf further alleges that on May 11, 2004, United Healthcare provided Carestaf written authorization for 24-hour per day skilled nursing care until May 28, 2004. (Compl. ¶13). On May 27, 2004, Carestaf received a fax from United Healthcare notifying it, that effective May 29, 2004, Plaintiff would only be covered for two hours of skilled nursing per day. (Compl. ¶13). However, Carestaf alleges that through a letter sent to Plaintiff by United Healthcare, it was informed that Plaintiff's coverage for 24-hours per day care would be continued until her appeal could be decided, which was to be no later than June 4, 2004. (Compl. ¶14).

On June 9, 2004, Carestaf contends that it was notified through Plaintiff that effective June 11, 2004, Plaintiff's benefits were being reduced to two hours of skilled nursing care per day. (Compl. ¶15). A few days later, United Healthcare indicated to Plaintiff that Honeywell would pay for 24-hour skilled nursing until the issue could be decided. (Compl. ¶15). Eventually, however, Defendant again decided that only two hours of skilled care was medically necessary. (Compl. ¶16). As a result on October 7, 2004 Plaintiff filed the present lawsuit. (Compl. ¶16). Throughout this process Carestaf alleges that it has continued to provide 24/7 skilled nursing care to Plaintiff. (Compl. ¶17).

Carestaf alleges that it has provided invoices to Defendant for bills associated with the care provided to Plaintiff, including invoices regarding dates that Honeywell agreed to provide benefits for 24/7 skilled nursing care, *i.e.*, dates prior to and including May 27, 2004, (Compl.¶19). However, Defendant has refused to provide full payment. (Compl. ¶19). Moreover, Carestaf asserts that it has not received any payment for care provided since June 6, 2004, despite its continued invoices to Defendant. (Compl. ¶21). As of January 24, 2005, Carestaf alleges that it is owed over $294,382.96 for the 24-hour skilled nursing care it has provided to Plaintiff. (Compl.¶21). On February 7, 2005 Plaintiff assigned all of her interest

in her claims against Defendant including her claims arising under the disability insurance policy (Compl.¶25).

With respect to Carestaf's ERISA claim, Carestaf, as the assignee of Plaintiff's right to be reimbursed, seeks to recover the benefits under the Plan unlawfully denied to Plaintiff. (Compl.¶54). With respect to Carestaf state law claims, Carestaf seeks to recover the amount outstanding for the 24/7 skilled nursing care provided to Plaintiff based upon Honeywell's alleged promises to Carestaf that Honeywell would provide coverage for the skilled nursing services provided to Plaintiff. (Compl. ¶'s 27,28,31,32,34-38,40,41).

### C.     Honeywell's Motion to Dismiss Has Been Converted Into a Motion for Summary Judgment.

As noted above, Honeywell's Motion to dismiss is based upon the theories that Carestaf's state law claims are preempted by ERISA's preemption clause, 29 U.S.C. § 1144(a), and Carestaf lacks standing to pursue Plaintiff's ERISA claim for benefits as the assignment of Plaintiff's right to reimbursement is not enforceable. With respect to Defendant's latter argument for dismissal, Defendant relies on the language of the Plan's Summary Plan Description, with an effective date of April 2001, ("SPD") which possess an anti-assignment clause. (Administrative Record Tab 1 ("AR") AR000114).

Carestaf's response to Honeywell's reliance on the anti-assignment clause is two-fold. First, Carestaf contends that the assignment is valid in spite of the anti-assignment clause. Second, Carestaf relates that there is confusion as to whether the 2001 Plan SPD is even controlling as there may be a more recent plan document that is not in the record. In light of the dispute with respect to the authenticity of the 2001 SPD, on December 19, 2005, the Court converted Defendant's Motion to dismiss into a Motion for summary judgment. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (stating that motion to dismiss will not be converted into a motion for summary judgment where the extrinsic document(s) are integral to plaintiff's claims and the authenticity is not disputed.) (Dkt.#132). The Court granted the parties 20-days to perform any necessary discovery and submit material pertinent to Defendant's Motion for summary judgment. The parties engaged in discovery during the

1  20-day period and have submitted supplemental information and briefing. (Dkt.#'s 138,141).

2  Carestaf's supplemental brief to the Court relates that there is still confusion as to whether the 2001 Plan controls or whether a more recent plan governs the dispute. Specifically, Carestaf relates that the document the Court should actually look to is the 2004 Summary Plan Description for the Honeywell Retiree Medical Plan ("2004 Plan"). Carestaf notes that the assignments at issue as well as the nursing services all occurred in 2004. However, Carestaf also relates that regardless of which document the Court looks to, the anti-assignment clause of both the 2001 and 2004 SPD's are invalid. Alternatively, Carestaf relates that in the event that the Court rejects Carestaf's arguments, it requests that it be given additional time under Rule 56(f) Fed.R.Civ.P. to develop its arguments regarding the invalidity of the anti-assignment clause. (Dkt.#140).

Conversely, Honeywell's supplement brief to the Court reaffirms its position that the 2001 Plan SPD is the document that controls. Specifically, Honeywell offers the declaration from Mr. Brian J. Marcotte, Vice President of Compensation and Benefits for Honeywell International Inc. (Honeywell's Statement of Facts in Support of Supplemental Submission, Dkt.#139, Exhibit 1). Mr. Marcotte relates that "the Plan document applicable to Diana Lyn Schaum's claim for benefits under the Plan is the Plan's Summary Plan Description dated April 2001. (Id. ¶2).

Thus, there still appears to be some dispute between the parties regarding the controlling effect of the 2001 SPD. The Defendant relies on the 2001 Plan SPD and its controlling effect and Carestaf contends that the anti-assignment provision of the 2001 Plan is not enforceable.

**II.   Summary Judgment Standard**

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate against

1 a party who "fails to make a showing sufficient to establish the existence of an element
2 essential to that party's case, and on which that party will bear the burden of proof at trial."
3 Celotex Corp., 477 U.S. at 322.  The Court views the evidence in the light most favorable to
4 the nonmoving party and draws any reasonable inferences in the nonmoving party's favor.
5 See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S.
6 1171 (1996).

**III.    Analysis**

    **A.    Preemption of State Law Claims**

29 U.S.C. § 1144(a), ERISA's preemption clause, states that the provisions of ERISA "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan..."  The Supreme Court has given the phrase "relate to" an expansive meaning, holding that a state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96, 103 S.Ct. 2890, 2899 (1983); Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1052 (9th Cir. 1999).  In evaluating whether a common law claim has "reference to" a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival.  If so, a sufficient "reference" exists to support preemption. California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc., 519 U.S. 316, 324-25 (1997).  If a state law claim is one seeking relief available under § 1132(a), *i.e.,* a claim for benefits,[2] ERISA's complete preemption applies.  Aetna Health Inc. v. Davilla, 542 U.S. 200, 209-11 (2004).

As noted above, Carestaf has asserted both an ERISA claim for benefits as the assignee of Plaintiff, as well as asserted several state law causes of action based upon alleged promises made by Defendant and its agent regarding the payment of benefits that would be provided

---

    [2] 28 U.S.C. § 1132(a) is ERISA's civil enforcement provision for benefits owed under an ERISA plan.

- 7 -

1 to Plaintiff. (Compl. ¶'s 26-57). In attempting to avoid the broad scope of ERISA's
2 preemption clause, Carestaf argues in its briefing to the Court that its state law claims are
3 distinguishable and independent from its accompanying ERISA claim and therefore do not
4 fall within the scope of preemption. For instance, Carestaf alleges that its state law claims
5 are not based upon any claim for plan benefits as the assignee of Plaintiff's right to
6 reimbursement, but rather are based upon the misrepresentations made by Honeywell and its
7 agent that Honeywell would provide payments for services covering 24/7 skilled medical
8 care. (Compl.¶'s 27,28,31,32,34-38,40,41). In other words, as Carestaf notes in its Reply
9 brief in support of its cross-Motion for partial summary judgment, "payment was to be
10 provided regardless of the ultimate outcome of the coverage dispute." (Carestaf's cross-
11 Motion for partial summary judgment, Dkt.#93, p.2).

     1. <u>The Authority Cited By Carestaf Is Not Persuasive</u>.

13  Carestaf cites several cases in its briefing in arguing that its state law claims do not fall
14 within the scope of ERISA's preemption clause. For instance, Carestaf cites the holding in
15 <u>Drs. Reichmister, Smulyan and Keehn, P.A. v. United Healthcare of Mid-Atlantic</u>, 93 F.
16 Supp 618 (D. Md. 2000) to demonstrate the potential independence and viability of state law
17 claims asserted by an assignee of a plan beneficiary. In <u>Reichmister</u>, the plaintiff physicians,
18 an assignee of the patient, asserted a state law claim against the patient's ERISA plan health
19 insurer, alleging that the insurer had negligently disclosed to the physicians that the patient
20 had health coverage. <u>Id.</u> at 619-20. The defendant ERISA insurer removed the state claim
21 to federal court on the grounds that the claim related to the ERISA plan and moved to
22 dismiss. <u>Id.</u> In denying the insurer's motion and remanding back to state court, the district
23 court held that the plaintiffs' state law claim did not "relate to" the ERISA plan. <u>Id.</u> at 621.
24 The Court rejected the argument that preemption was appropriate due to the fact that the
25 terms of the plan would have to be consulted. Specifically, the court noted that at the time
26 of the alleged misrepresentation, both parties had already conceded that the patient was not
27 entitled to any benefits under the plan. <u>Id.</u> Therefore, no examination of the plan was even
28 necessary as there was no dispute to the plan's coverage. <u>Id.</u>

1    This holding is not instructive to the present case, because unlike Reichmister, the parties involved in this litigation have clear ties to the ERISA Plan. For instance, this Court has already determined that Plaintiff is entitled to 24/7 benefits under the Plan as she is a beneficiary of the Plan. (Dkt#107). Moreover, Carestaf purports to be the assignee of Plaintiff and asserts that it is entitled to reimbursement for the benefits provided to Plaintiff. (Compl.¶11). Thus, unlike Reichmister, the parties to this action are not unrelated parties to the plan, but possess irrefutable ties.

Additionally, Carestaf's reliance on the holding of Meadows v. Employers Health Ins. 47 F.3d 1006, 1009 (9th Cir. 1995) is not persuasive. In Meadows, the Ninth Circuit rejected preemption of the third-party provider's state law claims against the ERISA plan because neither the third-party provider nor the plan participants had any ties to the ERISA plan at the time the alleged misrepresentation occurred. Id. Rather, the Ninth Circuit noted that because the third-party providers claims against the plan were made in the capacity of an independent entity rather than as in the capacity of an assignee of an ERISA beneficiary that preemption did not apply.

Again; however, Meadows is not instructive to the instant case because unlike Meadows, the present case does not involve only state claims made by a third-party provider with no relation to the Plan. Rather the present case involves claims by a third-party provider who has allegedly been assigned the Plaintiff's rights under the Plan to reimbursement as well as state law claims regarding promises made regarding the scope of coverage available under the Plan.

Lastly, this Court does not find persuasive Carestaf's reliance on the holding by the Tenth Circuit in Hospice of Metro Denver Inc., v. Group Health Ins. of Oklahoma, 944 F.2d 752 (10th Cir. 1991). In Hospice, the Tenth Circuit reversed the district court's determination that the third-party provider state law claims of promissory estoppel based upon alleged misrepresentations made by the group health insurer was preempted by ERISA. The Tenth Circuit found that preemption was not proper given that the hospital did not claim any rights under plan or breach of plan contract, but merely asserted that it was promised that coverage

- 9 -

1  was available for care of plan participant's child. Id. at 755-56. The Tenth Circuit also made
2  note that the hospital was not making any claims as the assignee of the patient's rights under
3  the plan. Id. at 753 n. 2  (Emphasis added).

4  Hospice is not instructive, because the instant case does involve a claim for plan benefits
5  by the third-party provider based upon the assignment of rights from Plaintiff. (Emphasis
6  added). Thus, rather than a third-party claim for damages, this case involves claims by the
7  third-party provider of both claims for benefits under the Plan as well as claims for
8  "damages" regarding alleged misrepresentations regarding the scope of coverage under the
9  Plan.[3]

10  Therefore, the authority cited by Carestaf in the attempt to establish the independence of
11  its state law claims against Defendant is distinguishable and unpersuasive. Moreover, the
12  case law, discussed below, demonstrates that preemption is appropriate.

13          2.        Case Law Demonstrates Preemption Is Proper.

14  The holding in Misic v. Building Service Employees Health and Welfare Trust, 789 F.2d
15  1374 (9th Cir. 1986) is informative in demonstrating that preemption of Carestaf's state law
16  claims is appropriate. In Misic, the plaintiff dentist who provided services to the
17  beneficiaries of the benefit plan and had been assigned their rights of reimbursement under
18  the plan, asserted both an ERISA claim as well as accompanying state law claims against the
19  insurer. Id. at 1375. (emphasis added). In preempting the plaintiff assignee's state law
20  claims, the Ninth Circuit affirmed the principle that "ERISA preempts the state claims of a
21  provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." Id.
22  at 1378.

23  This principle is equally applicable to the present case. Here, Carestaf steps in the shoes
24  of Plaintiff to recover benefits allegedly due and owing under the Plan due to Plaintiff's status

---

[3] This line of reasoning also distinguishes Plaintiff's reliance on the holding in Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045 (9th Cir. 1999), which involved independent claims for breach of provider agreements by medical providers against the health insurer. Unlike Blue Cross, the present case involves claims by the medical provider for benefits as the purported assignee of the Plan beneficiary.

- 10 -

as a beneficiary and Carestaf's status as her assignee. However, in the same action, Carestaf also asserts various state law claims against Defendant on the basis of alleged misrepresentations made regarding the coverage to be provided. However, both the state law claims asserted by Carestaf as well as the ERISA claim seek the same remedy; benefits due and owing under the Plan or "damages" paid based upon the Plan's coverage. To allow both the state law claims and the ERISA claim to go forward would create a scenario contrary to the purpose of the ERISA preemption clause; to maintain an exclusive remedial scheme. Cox v. Eichler, 765 F. Supp 601, 606 (N.D. Cal. 1990) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549 (1987).

Additional support for preemption is found in St. Mary Medical Center v. Christano, 724 F. Supp. 732 (C.D. Cal. 1989). In St. Mary's, the plaintiff hospital, as an assignee, sued the employer, insurer and plan administrator asserting state law claims of negligent misrepresentation and detrimental reliance based upon alleged misrepresentations of coverage to the health care provider assignee. The plaintiff also asserted an ERISA claim for benefits due and owing as the assignee of the beneficiary. The court held that preemption was appropriate with respect to the state law claims for two reasons. First, the plaintiff offered no evidence to suggest that such misrepresentations were even made, thus failed to satisfy its burden upon summary judgment. Second, and more importantly for purposes of this evaluation, the court found that the state law claims "related to" the plan. Specifically, the court found that no matter how the claims were characterized, they were claims for benefits. Id. at 739.

The same is true in the present case. Carestaf attempts to assert alleged non-derivative state law claims based upon alleged misrepresentations made to it by Defendant regarding the scope of benefits as well as a separate claim for ERISA benefits as the assignee of Plaintiff.[4] In these circumstances preemption of the state law claims is proper. If this Court

---

[4]Although this analysis is made under the standard governing summary judgment under Rule 56, it is not relevant whether this analysis is made under Rule 56 or in the context of a Rule 12(b)(6) motion. Under either standard, Plaintiff's state law claims are preempted.

- 11 -

1  were to allow the state law claims to go forward, it would be permitting Carestaf two bites
2  at the apple in terms of recovery of benefits under the Plan.  First, Carestaf would be
3  permitted to seek benefits as the assignee of Plaintiff.  Second, Carestaf would be able to
4  seek the recovery benefits disguised as "damages" based upon alleged misrepresentations
5  regarding the extent of coverage under the Plan.  Permitting such claims would be contrary
6  to ERISA's preemption clause.

7  Thus, for the reasons stated above, Carestaf's state law claims are preempted by ERISA's
8  preemption provision and therefore will be dismissed with prejudice. See Ramirez v. Inter-
9  Continental Hotels, 890 F.2d 760, 764 (5th Cir. 1989) (noting that dismissal of state law
10 claims preempted by ERISA operates as a decision on the merits and such claims should be
11 dismissed with prejudice.); see also Jabour v. Cigna Healthcare of Cal., Inc., 162 F. Supp.2d
12 1119 (C.D. Cal. 2001) (dismissing plaintiff's state law claim with prejudice where it was
13 preempted by ERISA).

14 **B.     Validity Of The Assignment From Plaintiff To Carestaf**

15 The next question before the Court is whether the assignment received by Carestaf from
16 Plaintiff is enforceable, thus affirming Carestaf's standing to assert an ERISA claim for
17 benefits.  Neither party contests that an assignment from a plan beneficiary to a third-party
18 health care provider is not enforceable; however, Defendant argues that the Plan's anti-
19 assignment clause is also enforceable and therefore eliminates Carestaf's standing to assert
20 such a claim.

21 The anti-assignment clause at issue can be found at page 000114 of the Administrative
22 Record.  The clause provides in pertinent part:

> **Limitations on Rights**.  Nothing in this Summary Plan Description says or implies that participation in this Plan is a guarantee of continued employment with the Employer.  Also, you cannot sell, transfer, or assign the value of your benefit under the Plan.

---

For instance, when taking Carestaf's allegations as true it is clear that they "relate to" the Plan and therefore are preempted.  See Sosa v. Hiraoke, 920 F.2d 1451, 1455 (9th Cir. 1990). Therefore, Plaintiff's request for additional time to conduct discovery on the state law claims is futile.  (Dkt.#141).

- 12 -

As noted by Carestaf, this Court has already made a first blush evaluation of this clause in denying Honeywell's opposition to Carestaf's Motion to Intervene. The Court held in pertinent part:

> First, under ERISA, enrollees can assign health and welfare benefits to health care providers. Misic v. Bldg. Serv. Employees Health and Welfare Trust, 789 F.2d 1374, 1377 (9th Cir. 1986). Further, Defendant's non-assignment clause does not appear to be enforceable because it does not comply with ERISA regulations. See 29 CRF § 2520.102-2(b), (requiring the non-assignment clause to be clear to the beneficiary and set out near the benefit so restricted). Here, Defendant's non-assignment clause is far removed from the benefit descriptions, placed in a section not even mentioned in the table of contents. The Court notes without holding that for purposes of finding a protectable interest, Plaintiff is allowed to assign her right to reimbursement to Carestaf under ERISA.

(Court Order, Dkt#78, p.6, ll. 6-12).

Thus, the issue now is whether after further analysis, the Court's preliminary evaluation holds true or whether the Plan's anti-assignment clause is valid.

The Ninth Circuit has held that ERISA's silence on welfare plan benefit assignments means ERISA does not preclude welfare plan benefit assignments. Misic, 789 F.3d at 1376-77. While ERISA permits assignments of welfare plan benefits, there is not an absolute right to make such assignments and given a valid and enforceable anti-assignment clause, the court will enforce such a provision between the contracting parties. See Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1478 (9th Cir. 1991) (stating "[a]s a general rule of law, where the parties' intent is clear, courts will enforce anti-assignment provisions.) (citing Restatement (Second) of Contracts, § 322 comment a (1981)).

As previously cited by this Court, 29 CFR 2520.102-2(b) ("section 102-2(b)") is relevant in determining whether the anti-assignment clause is valid. This section provides in pertinent part:

> The format of the summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need

not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

1. <u>The Plan's Anti-Assignment Clause Does Not Comply With the Specifications of Section 102-2(b)</u>.

In applying section 102-2(b) to the Plan's anti-assignment clause, there are some serious concerns raised regarding its application and location within the SPD. First, as a threshold matter, it is clear that the non-assignment clause falls within the scope of 29 CFR 2520.102-2(b). Although Defendant argues that assignment is not a plan "benefit" there can be no doubt that an anti-assignment provision is at the very least a "disadvantage," "limitation," or "restrictive plan provision" addressing or relating to a beneficiary's benefits under the Plan. In other words, at the very least, the anti-assignment provision of the SPD is a restriction on or "of" the Plaintiff's benefits. As such, section 102-2(b) directs that such provision comply with its specifications regarding disclosure.

Second, the Plan's restrictive provision on assignability is not disclosed in the benefits description and discussion of the Plan (AR00016-00091) and there is no reference in the benefits section to where a reader could find such a restriction. Section 102-2(b) clearly directs that all such restrictive provisions be located in "close conjunction with the description or summary of benefits" or at the very least "adjacent to the benefit description the page on which the restrictions are described."

Third, not only does the restriction on assignability fail to appear in the benefits section of the Plan, there is also no mention on any such restriction in the four page table of content section. (AR000004-000007). Rather, the restriction on assignability appears in a subsection of the Plan entitled as "ERISA" in a section entitled "Plan Administration." The restrictive provision appears as the second sentence following an unrelated sentence regarding employment at will with Honeywell under a heading entitled "Limitation on rights."

These considerations demonstrate that a reasonable person would likely be unaware that an anti-assignment clause existed in the Plan. As pointed out in section 102-2(b), one of its functions is to <u>inform</u> the beneficiary or participant of the "limitations" "disadvantages" or

1  "restrictions" of the Plan.  (Emphasis added).   Section 102-2(b) provides instructions
2  regarding how to lay out these "limitations," "disadvantages" or "restrictions" so that a
3  reasonable participant would be aware of them.  However, in reviewing the Plan's restriction
4  on assignability, it is clear that the anti-assignment clause is hidden within the Plan language
5  in a location that a reasonable person would not expect to find it and does not comply with
6  the specifications of section 102-2(b).  Accordingly, this Court will not give this provision
7  effect.

8   It is well established that the specifications of section 102-2(b) are to be recognized when
9  drafting an employment plan.  For instance, in Farr v. U.S. West Communications, Inc., 151
10  F.3d 908 (9th Cir. 1998) the Ninth Circuit, in looking to section 102-2(b), held that the
11  defendant employers under the ERISA plan breached their fiduciary duty under ERISA by
12  not informing the participants about potential negative tax consequences of lump sum
13  distributions under an early retirement plan referred to as the "5 + 5 program." Specifically,
14  in 1989, defendants issued a booklet entitled "Supplement to the Summary Plan Description"
15  and "Summary of Material Modification," which described the benefits of the retirement plan
16  relating to lump sum distributions.  Id. at 914.  However, the materials provided did not
17  provide any information regarding the potential adverse tax consequences by participating
18  in such a plan such as the fact that only "qualified" portions of the lump sum payments could
19  be rolled over without incurring any tax liability nor any explanation as to who might be
20  adversely affected by this limitation.  Id.  The Ninth Circuit held that "[t]hese omissions in
21  the summary plan description were misleading for employees making the important decision
22  of whether to exercise the 5 + 5 retirement option, and therefore, violate ERISA's
23  requirement that "[t]he format of the summary plan description must not have the effect to
24  misleading, misinforming or failing to inform participants and beneficiaries."  Id. at 914
25  (citing 29 C.F.R. § 2520.102-2(b)).

26   In applying the Ninth Circuit's holding in Farr to the present case, the same problem
27  exists.  Specifically, the impermissible possibility of participants and beneficiaries being
28  uninformed of aspects of benefits, "limitations" "disadvantages" and "limitations" of the plan.

1  In the instant case, unlike Farr, the anti-assignment clause was disclosed in the Plan;
2  however, it was disclosed in a section of the Plan against the specifications of section 102-
3  2(b) and in a location where a reasonable reader would not expect to find it.

4  The proper recourse for Defendant's failure to clearly set out the anti-assignment clause
5  is invalidation of this provision.  For instance, in Adams v. Southern Labor Union Pension
6  Trust Fund, 1997 WL 468323 (6th Cir. 1997) (unpublished opinion), the Sixth circuit
7  invalidated a provision within the pension plan directing  that applications for death or
8  disability benefits be submitted no later than 24-months after the date of the death or
9  disability.  However, the court held that because this provision could not be found anywhere
10 within the language within the SPD as directed by 29 CFR 2520.102, et seq., the provision
11 would not be given effect and the applications for benefits would not be barred upon this
12 basis. Id. at * 4.

13 The same principle holds true to this case.  Although the anti-assignment clause was
14 located within the language of the SPD, it is clear to this Court that the provision was hidden
15 with the Plan language, and thus could not reasonably inform the Plaintiff of this restriction.
16 Therefore, the Court will not go back and give such provision deference now.  Rather, the
17 appropriate remedy is to invalidate the provision.

18 Lastly, as noted by Carestaf, the authority relied upon by Defendant to support its
19 position that the clause is enforceable is not persuasive.  Defendant relies upon the holding
20 in Letourneau Lifelike Orthotics & Prosthetics v. Wal-Wart Stores, Inc., 298 F.3d 348 (5th
21 Cir. 2002).  In Letourneau, the Fifth Circuit noted that  "we must ... interpret ERISA plans'
22 provisions as they are likely to be 'understood by the average plan participant,' consistent
23 with ERISA's statutory drafting requirements." Id. at 351-52.  In applying this principle to
24 the case the Fifth Circuit noted that the medical service provider lacked standing to assert a
25 claim for ERISA benefits due to the fact that the plan possessed a valid non-assignment
26 clause.  Specifically, the court noted that "[a]pplying universally recognized canons of
27 contract interpretation to the plain wording of the instant anti-assignment clause leads
28 inexorably to the conclusion that any purported assignment of benefits ... would be void."

1 Id. at 352. Although there was no real dispute that the anti-assignment clause was vague or
2 otherwise hidden within the plan, it is relevant to note that the court cited the clear language
3 and apparent readily ascertainable location of the anti-assignment provision within the plan.
4 The language stated in pertinent part:

### ASSIGNMENT

### Transferring to Another Party

> Medical coverage benefits of this Plan may not be assigned, transferred or in any way made over to another party by a participant. Nothing contained in the written description of Wal-Mart medical coverage shall be construed to make the Plan or Wal-Mart Stores, Inc., liable to any third-party to whom a participant may be liable for medical care, treatment, or services.

### Assignment Overview

> Except as permitted by the Plan or as required by state Medicaid law, no attempted assignments of benefits will be recognized by the Plan.

Id. at 349.

13 In the present case, it is apparent that such clear and well-marked language does not exist.
14 Rather, the anti-assignment clause is absent from any relevant section a reasonable reader
15 would expect to find it. Moreover, there is no reference to any anti-assignment clause or
16 similar limitation provided in the benefits section or the table of contents section of the
17 policy. Under such circumstances, a reasonable plan participant would likely be ignorant of
18 the fact that the plan prohibited assignments to third-parties.

19 This Court finds that the Plan's anti-assignment clause is not valid and therefore
20 unenforceable. The result of this conclusion is that the assignment by Plaintiff to Carestaf
21 is thus valid, thereby permitting Carestaf to step into the shoes of Plaintiff with respect to a
22 claim for benefits under the Plan.

23 **Accordingly,**

24 **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Carestaf's
25 Complaint in Intervention, which has been converted into a Motion for summary judgment,
26 is granted in part and denied in part. Carestaf's state law claims are preempted by ERISA and
27 thus dismissed with prejudice. Defendant's Motion is denied to the extent Defendant seeks

to preclude Carestaf from asserting an ERISA claim for benefits as the assignee of Plaintiff. (Dkt. #87)

**IT IS FURTHER ORDERED** that Intervenor's Motion for partial summary judgment on the issue of whether the assignment from Plaintiff to Carestaf is valid and enforceable is granted. (Dkt.#93).

**IT IS FURTHER ORDERED** that Carestaf's Motion for Additional discovery pursuant to Rule 56(f) is denied as moot. (Dkt.#140).

**IT IS FURTHER ORDERED** that the Court will reserve its ruling on Carestaf's Motion for Summary Judgment on the ERISA Count of its Complaint in Intervention addressing payment for services rendered between June 13, 2004 and December 19, 2004 until the Motion is fully briefed. (Dkt.#147).

DATED this 31st day of March, 2006.

_____
Mary H. Murguia
United States District Judge